**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE CHEROKEE NATION, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-02154-TNM |
| | ) | |
| THE DEPARTMENT OF THE | ) | |
| INTERIOR, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PARTIES' JOINT STATEMENT PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 26(f) AND LOCAL CIVIL RULE 16.3**

Pursuant to the Court's January 16, 2020 Order (ECF No. 43), the United States of America; United States Department of the Interior; David Bernhardt, Secretary of the Department of the Interior; the Bureau of Indian Affairs; Tara Mac Lean Sweeney, Assistant Secretary-Indian Affairs; the Office of the Special Trustee for American Indians; Jerold Gidner, Acting Special Trustee for American Indians; the Office of Trust Fund Management; Casey Hammond, Acting Director of the Bureau of Land Management; the Office of Natural Resource Revenue; and Gregory Gould, Director of the Office of Natural Resources (collectively, "Federal Defendants") and the Cherokee Nation ("Plaintiff") (collectively, "the Parties") hereby file their joint report.

On January 28, 2020, the Parties initially met to discuss the resolution of the issues outlined below, pursuant to the Parties' obligations under Fed. R. Civ. P. 26(f), L.R. 16.3, and ECF No. 43.  Following an initial discussion, the Parties have conferred on multiple occasions in order to reach mutual resolution on the topics outlined below.  For topics where the Parties have not reached mutual resolution, the Parties have outlined their respective positions and the

justification for the position.

1.      **Statement of the Case.**

        *Plaintiff's Position:*

        Plaintiff, the Cherokee Nation, seeks a meaningful accounting of its assets held in trust by the United States and its agencies under common law, statutes, and the Administrative Procedure Act and injunctive relief necessary to ensure that the accounting is accurate and complete and to ensure that the Nation's Trust Fund is properly held and managed going forward.  The Cherokee Nation has asserted three claims:

        Count I demands, based on common law and applicable trust requirements governing the United States' relationship to Indian Tribes, an accounting of all trust resources that the United States has held or currently holds *qua* trustee for the Cherokee Nation.  The subject of Count I extends to all "Trust Funds that are held, and managed, by the United States or have been subject to the United States' trusteeship," including, without limitation, all lands owned by the Nation which the United States sold at least in part to pay money or other items to the Nation (including town lots, schools, buildings, or unalloted land), all leases, all minerals (including oil, gas, asphalt, gravel, stone), all rights of navigation, all rights to hunt and fish, all moneys, and any other resources of the Cherokee Nation that were or should have been reduced to monetary compensation to the Nation (including, for example the Cherokee Nation's saline deposits and timber resources).

        Count II demands that the United States provide an accounting that, at the minimum, comports with all statutory directives including 25 U.S.C. § 4011, 25 U.S.C. § 4044, and 25 U.S.C. § 162a.  Count II alleges that the United States has failed to meet these statutory requirements, including failure to provide an accurate accounting of balances and accrual of

interest, failure to maintain adequate control over receipts and disbursements, and failure to properly manage the Nation's Trust Fund including known financial accounts and money-generating natural resources.

The United States has stated that it believes that an effort undertaken by the Bureau of Indian Affairs and private accounting consultants (known as the "Trust Reconciliation Project" or "TRP") constitutes an accounting that meets the legal requirements and proposes to produce the TRP materials as part of an "administrative record" in this case.  Count III asserts that, as such, any conclusion by the Government that an "accounting" was rendered by these prior efforts to determine the accurate balance of the Cherokee Nation's Trust Fund is arbitrary and capricious or otherwise not in accordance with law, in violation of the Administrative Procedure Act ("APA").

*Federal Defendants' Position:*

Plaintiff seeks an "accounting" of its assets held in trust by the United States and its agencies.  Federal Defendants, however, have fully complied with all legal requirements and have provided Plaintiffs with the accountings as required by law.

**2.      Statutory Bases for Causes of Action.**

25 U.S.C. §§ 162a, 4011, 4044; 5 U.S.C. §§ 702–706.  Plaintiff also alleges that numerous treaties and Acts of Congress concerning the relationship between the Cherokee Nation and the United States, as identified in the Complaint, are the bases for the causes of action.

**3.      Defenses.**

a.   The Department of the Interior has provided, and continues to provide, the accountings required by law.

b.  Plaintiff's claims are barred, in whole or in part, by the statute of limitations, 28 U.S.C. § 2501.

c.  Plaintiff asserts claims that existed or accrued on or before August 12, 1946, and as such, those claims are barred by the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049, as amended (formerly 25 U.S.C. §§ 70 *et seq*.).

d.   Plaintiff asserts claims that are barred, in whole or in part, by the doctrines of laches, equitable estoppel, waiver and consent, and other equitable defenses.

e.  To the extent Plaintiff asserts claims that it or its privies or predecessors in interest asserted or could have asserted in a prior adjudication in which a court or tribunal of competent jurisdiction entered a final judgment, including, but not limited to, actions brought in the Court of Claims under special jurisdictional statutes, and before the Indian Claims Commission, those claims are barred in whole or in part by the doctrines of res judicata and/or collateral estoppel.

f.  Plaintiff asserts certain claims over which this Court lacks jurisdiction.

g.  One or more of Plaintiff's claims fails to state a claim upon which relief can be granted.

h.  One or more of Plaintiff's claims was settled in prior litigation, and is barred by the doctrine of accord and satisfaction.

**4.**    **Proposed Deadlines.**

*Plaintiffs' Proposed Deadlines:*

| | |
|---|---|
| Motions to join additional parties must be filed | February 28, 2020 |
| Motions to amend pleadings must be filed | March 13, 2020 |
| Initial Disclosures per Rule 26(a)(1) | April 17, 2020 |
| All parties to produce documents related to assets held or | Documents to be |

| | |
|---|---|
| managed by the United States as alleged in the Complaint, including known financial accounts; other monetary assets; land cessions, sales, and/or leases[1]; grazing rights and/or leases; timber; petroleum including oil and gas; coal; gravel and rock; riverbeds and banks; buildings or other structures; minerals; salt deposits; and any other trust asset of the Cherokee Nation held in trust by the United States government in the past or present | produced on a rolling basis with final production no later than July 31, 2020 |
| All fact discovery to be completed | February 5, 2021 |
| Exchange of list of expert witness(es) on any issue on which the party bears the burden of proof | March 22, 2021 |
| List of rebuttal expert witness(es) on any issue on which the other party bears the burden of proof | May 21, 2021 |
| Submission of expert reports on any issues on which the party bears the burden of proof | July 7, 2021 |
| Rebuttal expert reports due | October 1, 2021 |
| All discovery completed | December 17, 2021 |
| All dispositive and *Daubert* motions to be filed | January 15, 2022 |
| Final Pretrial Report – Phase I (to consist of determination of Defendants' duty to provide an appropriate accounting to the Cherokee Nation and the breach of that duty) | January 28, 2022 |
| Parties to file objections to the other party's' final exhibit list, under Fed. R. Civ. P. 26(a)(3)(B) and any other Objections and counter-designations to be filed | February 25, 2022 |

***Federal Defendants' Proposed Deadlines:***

Federal Defendants submit the following proposed Case Management Schedule:

| | |
|---|---|
| Motions to join additional parties | February 28, 2020 |
| Motions to amend pleadings | March 13, 2020 |
| Federal Defendants produce previous accountings to Plaintiff and certification of the administrative record to | April 13, 2020 |

---

[1] Such as the Cherokee Outlet, neutral lands in Kansas, the Cherokee Strip, Fort Gibson lands, the Chilocco School lands, lands in Texas, the Sequoyah School lands, and lands given to the railroad corporations as identified in the complaint.

| | |
|---|---|
| the Court | |
| Parties' deadline for an initial meet and confer regarding the adequacy of the administrative record for judicial review and the need for any discovery | May 13, 2020 |
| Motions to complete the administrative record, for the court to consider extra-record evidence, or to conduct discovery.  If any such motion is filed, the parties shall meet and confer and propose joint or opposed briefing schedules to fully adjudicate the motion.<br><br>The filing of such a motion will have the effect of vacating the briefing schedule set forth below, and the Parties will confer and propose a new case management schedule within 14 days of the Court's resolution of the motion. | June 12, 2020 |
| Plaintiffs' motion for summary judgment | August 26, 2020 |
| Federal Defendants' combined cross-motion and response | October 26, 2020 |
| Plaintiffs' combined response and reply | November 16, 2020 |
| Federal Defendants' reply | December 7, 2020 |

5.      **Assignment to Magistrate Judge.**

The Parties do not consent to the assignment of the case to a Magistrate Judge.

6.      **Discovery**

*Plaintiff's Position:*

Plaintiff's position is that discovery is required in order for the Court to determine the necessary scope of the accounting required by common law and statute, including the proper contents of the Cherokee Nation's Trust Fund, as alleged in the Complaint.

The "Nation has sued the Government for a declaratory judgment and injunctive relief under common law, statute, and the [APA]," and requests "an accounting of Trust Funds that are held or have been held by the United States *qua* trustee for the Nation," as well as an "injunction to ensure it receives an accurate accounting of past and future assets, regular statement balances,

6

and to restore the Trust Funds to their full entitlement."  Order Denying Motion to Dismiss, Doc. No. 42 at 2.  This is in keeping with well-established precedent holding that Indian trust accounting claims fall "both within and without the [APA]."  *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 24 (D.D.C. 1999) ("*Cobell V*").

Numerous courts, including the D.C. District Court, have held that discovery is permitted in trust accounting cases.  For example, in *Cobell*, the Court rejected the United States' argument that the case should be limited to review of an administrative record in part "because the underlying lawsuit is both an Indian case and a trust case in which the trustees have egregiously breached their fiduciary duties."  *Cobell v. Norton*, 226 F.R.D. 67, 92-93 (D.D.C. 2005).  *See also Cobell v. Babbitt*, 37 F. Supp. 2d 6 (D.D.C. 1999) (holding the United States in contempt for failing to make good faith efforts to comply with the court's discovery orders); *Cobell V*, 226 F. Supp. 2d at 159 (plaintiffs were entitled to an expanded scope of discovery because of the United States' failure to comply with earlier discovery orders).  Other courts agree.  *See Chickasaw Nation v. Dep't of the Interior*, Case No. 5:05-cv-01524-W, Doc. No. 100 (Order) (May 4, 2010); *id.*, Doc. No. 180 (Order) (May 8, 2014); *Otoe-Missouria Tribe v. Salazar*, Case No. 5:06-cv-01436-C, Doc. No. 70 (Scheduling Order) (Apr. 2, 2009); *Seminole Nation of Okla. v. Salazar*, Case No. 6:06-cv-00556-SPS, Doc. No. 88 (Scheduling Order) (July 6, 2009).  In each of those cases, the United States argued that discovery should not be permitted, and, in each of those cases, the United States' position was rejected by the court.[2]

---

[2] Contrary to the United States' position, the Tenth Circuit did nothing in the *Fletcher* cases to reduce the persuasive value of the district courts' orders, in part because the issue in them, as here—whether Plaintiff is entitled to discovery or limited to record review—was never raised with, or addressed by, the Tenth Circuit.

Limiting this case to the narrow record suggested by the United States would deprive the Cherokee Nation and the Court of the ability to determine whether the "reconciliation" proffered by the United States as an "accounting" actually constitutes a full, accurate, and complete accounting as required by law.  Discovery is designed to develop a common understanding of the facts underlying the case and to ensure proper presentation to the Court, such that the Court can craft an appropriate remedy.  *See Hickman v. Taylor*, 329 U.S. 495, 500 (1947).  As previously recognized by this Court, these principles apply with at least as much force in Indian trust fund cases.  *See Cobell v. Babbitt*, 52 F. Supp. 11, 19 (D.D.C. 1999) (recognizing that discovery would permit the Court to "have the full record before it to determine what equity requires.").  Compilation of available information for an accounting, and a determination of what information is missing, is key to determining what additional accounting measures are necessary, and the nature and scope of the appropriate accounting.

The Nation also seeks injunctive relief sufficient to ensure that its Trust Fund resources are properly managed going forward.  Count II demands injunctive relief requiring the United States to provide: adequate systems of reporting the Nation's trust fund balances; controls over receipts and disbursements; periodic reconciliations; consistent, written procedures for managing the Nation's accounts; staffing and training that is adequate to oversee the Nation's funds; and management of the Nation's resources held in trust by the United States for the Nation.  The United States is obligated to provide each of these as part of its duty to appropriately manage the Nation's trust assets.  Discovery is required to show that the United States has (or has not) breached these obligations, and to show why injunctive relief is proper to protect the Nation's rights to such trust asset management and control.

The scope of discovery proposed by the Nation falls squarely within the scope of discovery as set out in the Federal Rules.  *See* Fed. R. Civ. P. 26(b)(1) (providing that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").  As trustee for the Nation, the United States has in its possession a unique set of records related to the Nation's Trust account which the Nation is entitled to as it seeks to establish its rights to a full accounting by the United States, and the scope and method for a proper accounting.

Full discovery in this case is particularly important given the United States' role in the loss of the Nation's resources and records.  As the United States inserted itself as the trustee of the Cherokee Nation, it took control of the Nation's government as well as its resources and documents, and has comprehensively controlled the Nation's resources since.  The United States' role in mishandling tribes' records has been considered by other courts in determining that the equities weigh firmly in favor of broad discovery against the United States in trust accounting cases.  The Court of Federal Claims, for example, has rejected the United States' efforts to limit discovery, explaining that the United States has frequently "failed adequately to protect various tribal trust documents," and has "mishandled or lost" records in tribal cases, *Jicarilla Apache Nation v. United States*, 91 Fed. Cl. 489, 495 (2010), and cautioned:

> Any significant further delay, then, threatens the loss or destruction of further evidence relevant to this case, with obvious negative impact on the plaintiff's ability to mount a successful case. Contrary to defendant's claims, then, the situation here is hardly one in which the equities are stacked in its favor. The reverse is far more likely to be the case.

*Id.*

The discovery sought by the Nation is necessary, in part, due to the United States'
complete take-over of the Cherokee Nation, including its government and records, from 1906 to
1976, as alleged in the Complaint.  The United States' "bureaucratic imperialism" over the
Cherokee Nation "manifested itself in deliberate attempts to frustrate, debilitate, and generally
prevent from functioning the tribal governments expressly preserved by § 28 of the [Five Tribes]
Act."  *Harjo v. Kleppe*, 420 F. Supp. 1110, 1130 (D.C. Cir. 1976).[3]  As a result of the United
States' actions to disable the Nation's government, the Nation, through no fault of its own, lost
possession of its pre-1970 documents to the United States.  The United States and the Cherokee
Nation already have been collecting records from various historical archives and sources for this
case for several years, demonstrating the recognized importance of identifying, collecting, and
preserving pertinent historical records.  Evaluation of the Nation's claims (and the United States'
defenses) will require review of historical documents.

Finally, with respect to Count III, the United States asserts that it can produce an
administrative record for review by the Court as to whether the United States has violated the
APA by acting contrary to its statutory obligations or has acted arbitrarily and capriciously by
withholding required agency action.  *See* Doc. No. 2-1 ¶¶ 160-61 (stating the Nation's claim
under Count III for violation of the APA).  Even if the United States were able to produce an
administrative record to support the TRP, the TRP only covered certain transactions for a portion
of the Trust Fund during a limited time period, and so there has been no government action (and
no record to review) concerning the proper accounting of the Nation's Trust Fund for

---

[3] *See also* "Report of the Commission on Indian Trust Administration and Reform" (cautioning
that the United States that "the usual zealous defense" of trust accounting claims "should be
tempered and informed by the federal tribal trust.").

transactions not covered by the TRP, for assets beyond the limited known financial accounts reviewed by Arthur Andersen, and any transactions before 1972 or after 1992.  Discovery is also warranted to show the shortcomings of the TRP process.

### Federal Defendants' Position:

Federal Defendants provide a schedule above that could fully resolve the merits of this case by December 7, 2020.  This approach is based upon the fact that the Department of the Interior ("Interior") has provided all accountings required by law to the Cherokee Nation. Interior has fulfilled its accounting duties and provided Plaintiff the accountings that are required by law.  Plaintiff disagrees.  But that dispute can only be resolved by considering the accountings provided in the context of applicable law.  Thus, resolving the merits of this case necessarily (and only) requires providing Plaintiff and the Court with the accountings and information relied upon in developing those materials for a determination on the legality of that accounting.

Despite the fact that Plaintiff attempts to state the issue through three different causes of action—this case presents one overarching question on the merits that is at the core of each cause of action:  did Federal Defendants provide and do they continue to provide to Plaintiff that which is required under the law?  *Compare* Compl. ¶¶ 131–37, ECF. No. 2-1 (common law claims), *with id.* ¶¶ 138–154 (trust responsibility claims citing 25 U.S.C. §§ 162a, 4011, 4044), *and id.* ¶¶ 155–167 (Administrative Procedure Act, "APA," claim repeating legal duties and requested relief in ¶¶ 145–154).  In *Cobell v. Babbitt*, 91 F. Supp. 2d 1 (D.D.C. 1999), which is cited by and relied upon by Plaintiff, Judge Lamberth recognized that even when the court was presented with common law claims, "Plaintiffs' actionable rights in this case stem from and are shaped by three bodies of law.  In all three cases, plaintiff's substantive rights are created by—and therefore

governed by statute . . . .  Thus, although 'non-statutory' in title, non-statutory review demands the existence of a statutory right or prohibition."  *Id*. at 29-30.  In this vein, the proper lens to be applied initially to this case is the review of the agency's administrative record.  *See id*. at 38 (stating that "the focal point of this court's APA review 'should be the administrative record already in existence, not some new record made initially in the reviewing court.'" (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).  But, in any event, whether looked at through the lens of the APA or not, the proper way to begin to answer the relevant question of whether the accounting that Interior has provided is in compliance with the law is through legal briefing focused on the applicable legal requirements and whether or not Interior's actions met those requirements.  To the extent Plaintiff is seeking injunctive relief as to Interior's management of funds, the D.C. Circuit has rejected the availability of that relief.  *Cobell v. Norton*, 240 F.3d 1081, 1106 (D.C. Cir. 2001) (noting that "defendants should be afforded sufficient discretion in determining the precise route they take.").

There are several other threshold legal issues that counsel in favor of near-term dispositive briefing.  For example, the Supreme Court has made clear that the United States' fiduciary obligations to Native Americans derive from statute, not the common law.  "Though the relevant statutes denominate the relationship between the Government and the Indians a 'trust,' that trust is defined and governed by statutes rather than the common law."  *U.S. v. Jicarilla Apache Nation*, 564 U.S. 162, 173 (2011).  And, as was recognized by the Tenth Circuit in *Fletcher v. U.S.*, 730 F.3d 1206 (10th Cir. 2013) (Gorsuch, Circuit Judge) ("*Fletcher II*"), the confines of the United States' obligation to account to Plaintiff are defined by statute, and "to trigger a duty to account the plaintiffs in this case first had to identify some statute or regulation creating a trust relationship between them and the government."  730 F.3d at 1209.  Other issues

would include the historical nature of the accounting that Plaintiff desires; the statute of

limitations; and the rather limited nature of the accounting duties Congress has set forth in

statute.  Judicial efficiency counsels in favor of resolving these issues in conjunction with

dispositive briefing on the legal adequacy of the provided accounting.  We have proposed a

reasonable schedule that concludes briefing on motions for summary judgment as to all these

issue by November 16, 2020.

It makes little sense for the parties to enter initially into full-blown discovery as

suggested by Plaintiff for two key reasons.  *First*, discovery for purposes of the merits would not

be "proportional to the needs of the case" nor have any "importance . . . in resolving the issues"

presented in the Complaint.  Fed. R. Civ. P. 26(b)(1).  Whether looked at from the perspective of

record review under the APA or a more-traditional civil action, the Court needs to determine the

cornerstone legal question presented here—whether the "accounting" Interior has provided and

is providing is legally sufficient.  If Interior has and is providing a legally sufficient accounting,

then the case ends.  If Interior has not, then a remand to Interior for further accounting (or

injunctive relief to that same effect) may be appropriate.  Plaintiff now seems to desire discovery

to determine the necessary scope of the accounting that the law requires.  But that is a legal

question, not a factual one.

Plaintiff also appears to believe that it was or is entitled to more "accounting" documents

and information than Interior has provided or is providing.  But collection and production of

those documents and information concerns the question of the appropriate remedy from any

accountings that a court may find to have fallen short of legal requirements.  Plaintiff alleges

throughout their Complaint that they have not received the accountings required by law.  But

Interior submits that Plaintiffs have indeed received those accountings.  That issue can and

should be resolved first through judicial review of the accountings that have been provided.  If the Court determines that the accountings were in any way inadequate as a matter of law, then Plaintiffs may be entitled to more "accounting" documents as part of any remedy to correct any deficiencies found by the court.

Plaintiff's citation to *Hickman v. Taylor*, 329 U.S. 495, 500 (1947), all but concedes this. The fact that there may be questions about the scope of any potential remedy is not a reason to conduct discovery at this stage.  No amount of discovery will change the accounting that Interior has already given.  Discovery could be relevant to resolving any trust mismanagement claims that might be revealed in an accounting.  But, as detailed further below, that would be a different case, in a different court.  Thus, Plaintiff's references to discovery proceedings in the Court of Federal Claims breach of trust cases are off-point.

By contrast, as the Tenth Circuit instructed in *Fletcher II*, "a duty to account is a duty to account, not a duty to respond to and disprove any and all potential breaches of fiduciary duty a beneficiary might wish to pursue once the accounting information is in hand."  *Fletcher II*, 730 F.3d at 1215.  *Fletcher* is particularly instructive here because it presents an analogous scenario:  one in which the plaintiffs sought an accounting regarding the collection of royalty income from oil and gas reserves and its distribution to tribal members.  *Fletcher v. U.S.*, 153 F. Supp. 3d 1354, 1356 (N.D. Okla. 2015).  That issue was resolved based upon judicial review of an administrative record containing the accounting materials.  The district court considered those materials and made a determination as to whether the government's provided accounting complied with the applicable law.  Plaintiffs appealed, suggesting that the accounting did not encompass enough information about the trust's receipts, and that the volumes of oil, gas, and minerals and the corresponding prices, should be disclosed.  The Tenth Circuit affirmed, noting

that *Fletcher II* did not require an accounting "akin to an audit of an oil and gas operating company" and that "a duty to account is a duty to account, not a duty to respond to and disprove any and all potential breaches of fiduciary duty a beneficiary might want to pursue once the accounting information is in hand." *Fletcher v. U.S.*, 854 F.3d 1201, 1206-07 (10th Cir. 2017) (quoting *Fletcher II*, 730 F.3d at 1215). Similarly here, a determination on whether Interior provided the legally required accounting to Plaintiff should be decided on judicial review of the accounting actually provided (and the administrative record upon which Interior's accounting decisions were based).

We understand that Plaintiff anticipates that the accounting that has been provided does not comply with legal requirements. Interior strongly disagrees. But, if Plaintiff is correct, it would only support quickly moving to summary judgment on the legal adequacy of that accounting. Further, to the extent Plaintiff may believe additional extra-record evidence, such as limited discovery or expert opinion evidence, were necessary for a fulsome judicial review, our schedule includes an opportunity for the parties to present to those arguments to the Court prior to the Court's consideration of the merits. But any such determination would first require Plaintiff and the Court to consider the materials that constitute Interior's accounting and administrative record therefor.

*Second*, even assuming that some discovery beyond Interior's administrative record was deemed to be appropriate, the discovery that Plaintiff seeks is extraordinarily disproportionate to what would be needed to resolve the merits. Plaintiff intends to request every document that touches on Interior's management of the Nation's monetary and non-monetary assets from 1785 (the date of the first treaty between the Nation and the United States) to the date of any discovery production. This presents two options. One (the more likely) would be that the parties initially

engage in motions practice on the proper scope of discovery almost immediately following the start of discovery.  The other would be that Federal Defendants engage in a lengthy and expensive search, collection, imaging, and coding process at multiple National Archives facilities and Federal Records Centers spread throughout the country.  "A green eye-shade death march through every line of every account over the last one hundred years isn't inevitable:  the trial court may focus the inquiry in ways designed to get the plaintiffs what they need most without imposing gratuitous costs on the government."  *Fletcher II*, 730 F.3d at 1214.

Plaintiff posits that numerous other courts have permitted discovery in trust accounting cases; however, the cases are distinguishable.  *Cobell*, for example, was a class action brought by individual tribal members (not by a single tribe) for an accounting of the entire Individual Indian Money system.  *Cobell v. Norton*, 226 F.R.D. 67 (D.D.C. 2005).  And, even there, the court did not ultimately grant the expansive discovery that Plaintiff seeks here.  *Id.* at 77.  Instead, the court recognized that for which we advocate here:  questions of what, if any, additional documents need to be produced as part of an accounting is a question of remedy.  *Id.* ("plaintiffs' single 'live' cause of action seeks a remedy for this legal breach [to provide an accounting] and the remedy that this Court has fashioned is limited to ensuring that the defendants produce the requisite accounting of the Indian trust.").  The present case is far from the remedy stage.[4]

---

[4] Plaintiff also cites cases in support of its request for initial discovery that are now questionable given the Tenth Circuit's ruling in *Fletcher II*, *supra*.  Each of the cases cited by Plaintiff precede the Tenth Circuit's ruling in *Fletcher II*, which recognized that the confines of Federal Defendants' duty to account are bounded by statute.  *See* Plaintiff's citation to *Chickasaw Nation v. Dep't of the Interior*, Case No. 5:05-cv-01524-W, Doc. No. 100 (Order) (May 4, 2010), Doc. No. 180 (Order) (May 8, 2014); *Otoe-Missouria Tribe v. Salazar*, Case No. 5:06-cv-01436-C, Doc. No. 70 (Scheduling Order) (Apr. 2, 2009); *Seminole Nation of Okla. v. Salazar*, Case No. 6:06-cv-00556-SPS, Doc. No. 88 (Scheduling Order) (July 6, 2009).

Plaintiff's proposal also invokes the discovery efforts required in tribal trust cases in the Court of Federal Claims that seek monetary damages for alleged mismanagement of tribal monetary and non-monetary trust resources. *See Jicarilla Apache Nation v. United States*, 88 Fed. Cl. 1, 4 (2009) (describing Federal Defendants' position to extend the discovery deadline due to the breadth of the discovery requested and the vast size of the depositories to be searched). That is the not the case Plaintiff brings here. Indeed, Plaintiff emphatically advocated as much in opposing Federal Defendants' motion to dismiss. If discovery in this case were in line with one in the Court of Federal Claims, Interior roughly estimates that the collection, identification of relevant documents, and subsequent coding for production would take years to complete. Interior anticipates that it would need to search federal repositories that contain archived paper copies of potentially relevant records that would need to be scanned, reviewed for relevance, and coded for production. It makes little sense to undertake such burdensome discovery solely for the sake of discovery, when the schedule Federal Defendants present above would resolve the merits much more efficiently.

**7.      Format for Electronic Production.**

Federal Defendants submit, for the reasons explained above, that discovery is inappropriate at this juncture of the litigation. Should the Court order discovery, Federal Defendants respectfully submit that the Parties should be directed to negotiate and submit a proposed order governing the any electronic discovery issues presented by electronically stored information, including the format for electronic productions. Counsel for the Parties held initial discussions on such an order during their meet and confer. Given the nature of Plaintiff's requests, Federal Defendants believe the bulk of any document production (should the Court find

discovery appropriate) will come from scanned archived documents currently warehoused in federal records repositories or at National Archives facilities.

**8.      Protective Order.**

The Parties anticipate that a protective order will not be needed in the case as many of the records at issue likely contain Plaintiff's own account numbers and other financial information. However, the Parties would likely be moving to file any such information that reflects Plaintiff's account numbers and other financial information under seal.  Should any party conclude that a protective order is warranted, the Parties will work to submit a proposed protective order for the Court's consideration and approval.

**9.      Bifurcation.**

The Parties generally agree that the litigation can be bifurcated and that any initial phase would focus, at least in part, on resolution of Plaintiff's claim that the United States and its agencies are obligated to account for the Plaintiff's assets and the scope of that duty.  Federal Defendants believe that the initial phase, by its nature would also need to include judicial review of the accountings that have been provided to Plaintiff.  Plaintiff also believes that any initial phase would include an order for Federal Defendants to provide any further accounting that the Court may deem necessary in accordance with its determination of the appropriate scope of the United States' accounting duty.  Federal Defendants' view is that any such further accounting is a question of remedy, which should be addressed in a second phase.

From Plaintiff's perspective, any second phase would include review of any accounting completed in accordance with the Court's order at the end of the first phase and resolution of Plaintiff's restitution claims.  Federal Defendants do not believe restitution to be an appropriate remedy.

10.     **Alternative Dispute Resolution**

Plaintiff believes that alternative dispute resolution may be appropriate in this case.

Federal Defendants respectfully submit that Alternative Dispute Resolution is not appropriate at

this time.

11.     **Other Matters.**

The Cherokee Nation requests permission for additional counsel to appear by phone in

this case.  Federal Defendants do not oppose the request.

Respectfully submitted this 11th day of February 2020.

Sara E. Hill (*admitted pro hac vice*)
Attorney General
**CHEROKEE NATION**
P.O. Box 948
Tahlequah, OK 74465-0948
Tel: 918-456-0671
Fax: 918-458-5580
Email: sarah-hill@cherokee.org

Chad C. Harsha (*admitted pro hac vice*)
Secretary of Natural Resources
**CHEROKEE NATION**
P.O. Box 948
Tahlequah, OK 74465-0948
Tel: 918-453-5369
Fax: 918-458-6142
Email: chad-harsha@cherokee.org

  s/ Anne E. Lynch
Anne E. Lynch, DC Bar No. 976226
Michael D. Goodstein, DC Bar No. 469156
**VAN NESS FELDMAN LLP**
1050 Thomas Jefferson Street NW
Seventh Floor
Washington, DC 20007
Tel: 202-298-1800

Email: alynch@vnf.com
mgoodstein@vnf.com

David F. Askman
Michael M. Frandina
**ASKMAN LAW FIRM LLC**
1543 Champa Street, Suite 400
Denver, CO 80202
Tel: 720-407-4331
Email: dave@askmanlaw.com
michael@askmanlaw.com

Jason B. Aamodt
Krystina E. Phillips
Dallas L.D. Strimple
**INDIAN AND ENVIRONMENTAL LAW GROUP**
204 Reunion Center
Nine East Fourth Street
Tulsa, OK 74103
Tel: 918-347-6169
Email: jason@iaelaw.com
krystina@iaelaw.com
dallas@iaelaw.com

*Counsel for Plaintiff Cherokee Nation*

PRERAK SHAH

Acting Deputy Assistant Attorney General
Environment & Natural Resources Division

*/s/ Dedra S. Curteman*
DEDRA S. CURTEMAN
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0446
Dedra.Curteman@usdoj.gov

*Attorneys for Federal Defendants*

*Of Counsel for Federal Defendants:*

KENNETH DALTON
Director
DONDRAE MAIDEN
Senior Attorney-Advisor
SHANI WALKER
Attorney-Advisor
KAREN BOYD
Attorney-Advisor

Office of the Solicitor, Indian Trust Litigation Office
U.S. Department of the Interior

THOMAS B. KEARNS
Office of the Chief Counsel
Bureau of the Fiscal Service
U.S. Department of the Treasury