## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CHEROKEE NATION,<br><br>*Plaintiff,*<br><br>v.<br><br>THE DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>*Defendants.* | Case No. 1:19-cv-02154-TNM-ZMF |

### JOINT STIPULATION OF SETTLEMENT AND [PROPOSED] ORDER

WHEREAS, on July 19, 2019, the Cherokee Nation ("Plaintiff" or "Tribe") filed this case for declaratory and injunctive relief against the Department of the Interior, David Bernhardt, Secretary of the Interior, the Bureau of Indian Affairs, Tara Mac Lean Sweeney, Assistant Secretary-Indian Affairs, the Office of the Special Trustee for American Indians, Jerold Gidner, Acting Special Trustee for American Indians, the Office of Trust Fund Management, Casey Hammond, Acting Director of the Bureau of Land Management, the Office of Natural Resources Revenue, Gregory J. Gould, Director of the Office of Natural Resources Revenue, the United States Department of the Treasury, Steven T. Mnuchin, the Secretary of the Treasury, and the United States of America;

WHEREAS, Deb Haaland is currently the Secretary of the Interior; Bryan Newland is currently the Assistant Secretary-Indian Affairs of the Bureau of Indian Affairs; Jerold Gidner is currently the Director of the Bureau of Trust Funds Administration (an agency created October of 2020 performing duties formerly performed by the Office of the Special Trustee for American Indians and the Office of Trust Funds Management), Tracy Stone-Manning is currently Director

of the Bureau of Land Management, Howard Cantor is currently the Director of the Office of

Natural Resources Revenue, and Janet Yellen is currently the Secretary of the Treasury

(collectively, "Defendants");

WHEREAS, Plaintiff is seeking an accounting and reconciliation of its trust fund

accounts and non-monetary trust assets or resources in this case;

WHEREAS, Plaintiff claims that the Defendants' failure to account for the management

of Plaintiff's trust funds and non-monetary trust assets or resources requires restitution, and may

provide an additional basis for a claim for monetary damages;

WHEREAS, on February 10, 2023, Magistrate Judge Zia M. Faruqui issued a report and

recommendation on the Parties' cross-motions for summary judgment partially adverse to

Defendants, and Defendants filed objections to that Report and Recommendation on March 20,

2023, requesting that the District Court grant summary judgment in favor of Defendants;

WHEREAS, shortly after briefing on Defendants' objections to Magistrate Judge

Faruqui's report and recommendation concluded, the Court stayed the litigation and referred the

case to mediation pursuant to the Parties' joint request, and, on July 5, 2024, lifted the stay based

on the joint request of the Parties;

WHEREAS, on September 25, 2024 the Court issued a Memorandum Opinion and Order

on the cross-motions for summary judgment, the Magistrate Judge's report and recommendation

addressing same and the Defendants' objections thereto;

WHEREAS, Plaintiff and Defendants ("the Parties") have conducted settlement

negotiations to address globally the Plaintiff's trust accounting claims Plaintiffs brought in this

case, as well as any trust mismanagement claims actionable in this forum or others;

WHEREAS, the Parties have discussed and agreed to a settlement of Plaintiff's existing or potential claims and issues relating to (1) Defendants' alleged failure to provide an accounting of Plaintiff's trust funds and non-monetary trust assets or resources; (2) Defendants' alleged mismanagement of Plaintiff's non-monetary trust assets or resources; and (3) Defendants' alleged mismanagement of Plaintiff's trust funds;

WHEREAS, the Parties believe that it is in their best interests to enter into this Joint Stipulation of Settlement, which resolves, subject to the limitations set out below, the above-mentioned trust accounting and trust mismanagement claims; and

WHEREAS, in entering into this Joint Stipulation of Settlement, the Parties intend that there be no third-party beneficiaries;

NOW, THEREFORE, THE PARTIES HEREBY JOINTLY STIPULATE TO THE FOLLOWING:

1.      **Settlement Without Admission of Liability or Wrongdoing.**  This Joint Stipulation of Settlement is the result of compromise and settlement between the Parties.  It shall not constitute or be construed as an admission of liability or wrongdoing by any Party, and it shall not be utilized or admissible as precedent, evidence, or argument in any other proceeding, except as may be necessary to ensure compliance with or to carry out its terms and conditions.

2.      **Amount of Settlement.** In consideration for (a) the dismissal of this case with prejudice, pursuant to Paragraph 3 below; (b) the waiver, release, and covenant not to sue that are set forth in Paragraph 4 below, and (c) any other commitments and covenants made by Plaintiff in this Joint Stipulation of Settlement, Defendants will pay to Plaintiff the sum of $80,000,000 (Eighty Million Dollars) in full, complete, and final settlement.

**3.      Dismissal with Prejudice.** In consideration for the payment required by Paragraph 2 above, the Parties shall file a joint motion and proposed order or a joint stipulation to dismiss this case with prejudice in accordance with the requirements of Paragraph 17 below.

**4.      Full Settlement, Waiver, Release, and Covenant Not to Sue.** In consideration of the payment required by Paragraph 2 above, and subject to the limitations set out in Paragraph 6 below, Plaintiff hereby waives, releases, and covenants not to sue the Defendants, the United States, or any other agency thereof, in any administrative or judicial forum on any and all claims, causes of action, obligations, and/or liabilities of any kind or nature whatsoever, known or unknown, regardless of legal theory, for any damages or any equitable or specific relief, that are based on harms or violations occurring before the date of this Court's entry of this Joint Stipulation of Settlement as an Order and that relate to Defendants' management or accounting of Plaintiff's trust funds or Plaintiff's non-monetary trust assets or resources. The claims being settled include, but are not limited to, the following:

a.      Defendants' alleged obligation to provide a historical accounting or reconciliation of Plaintiff's trust funds and non-monetary trust assets or resources, and Defendants' fulfillment of any such obligation;

b.      Defendants' alleged mismanagement of Plaintiff's non-monetary trust assets or resources, including but not limited to any claim or allegation that:

(1)      Defendants failed to make Plaintiff's non-monetary trust assets or resources productive;

(2)      Defendants failed to obtain an appropriate return on, or appropriate consideration for, Plaintiff's non-monetary trust assets or resources;

(3)      Defendants failed to record or collect, fully or timely, or at all,

rents, fees, or royalties, or other payments for the transfer, sale, encumbrance, or use of Plaintiff's non-monetary trust assets or resources;

(4)     Defendants failed to preserve, protect, safeguard, or maintain Plaintiff's non-monetary trust assets or resources;

(5)     Defendants permitted the misuse or overuse of Plaintiff's non-monetary trust assets or resources;

(6)     Defendants failed to manage Plaintiff's non-monetary trust assets or resources appropriately, including through the approval of agreements for the use and extraction of natural resources which are or were located in or on Plaintiff's trust property, leases of Plaintiff's trust lands, easements across Plaintiff's trust lands, and other grants to third parties of authority to use Plaintiff's trust lands or natural resources;

(7)     Defendants breached any duty under 25 U.S.C. § 162a(d), 25 U.S.C. §§ 311-328, 25 U.S.C. §§ 396a-396g, 25 U.S.C. §§ 415-416i, 25 U.S.C. §§ 3101-3120, 25 U.S.C. §§ 3901-3908, 25 U.S.C. §§ 3801-3805; or any other statutes or regulations applicable to non-monetary Tribal trust assets;

(8)     Defendants failed to enforce the terms of any permits, leases, or contracts for the transfer, sale, encumbrance, or use of Plaintiff's non-monetary trust assets or resources;

(9)     Defendants failed to prevent trespass on Plaintiff's non-monetary trust assets or resources;

(10)    Defendants failed to report, provide information about their actions or decisions relating thereto;

(11)    Defendants improperly or inappropriately transferred, sold,

encumbered, allotted, managed, or used Plaintiff's non-monetary trust assets or resources; and

(12)    Defendants failed to manage Plaintiff's non-monetary trust assets or resources appropriately by failing to undertake prudent transactions for the sale, lease, use, or disposal of Plaintiff's non-monetary trust assets or resources.

c.    Defendants' alleged mismanagement of Plaintiff's trust funds,[1] including but not limited to any claim or allegation that:

(1)    Defendants failed to invest tribal income in a timely manner;

(2)    Defendants failed to obtain an appropriate return on invested funds;

(3)    Defendants failed to deposit monies into trust funds or disburse monies from trust funds in a proper and timely manner;

(4)    Defendants disbursed monies without proper authorization, including that of Plaintiff;

(5)    Defendants failed to report or provide information about their actions or decisions relating to Plaintiff's trust fund accounts; and

d.    Defendants' alleged failure to perform trust duties related to the management of trust funds and non-monetary trust assets or resources, as set out in the complaint

---

[1] For purposes of this Joint Stipulation of Settlement, Plaintiff's trust funds include but are not limited to any monies that have been received by Plaintiff in compensation for or as a result of the settlement of Plaintiff's pre-1946 claims brought before the Indian Claims Commission ("ICC") and the monies in any Tribal-related accounts; any proceeds-of-labor accounts; any Tribal-Individual Indian Money ("Tribal-related IIM") or special deposit accounts; any Indian Money-Proceeds of Labor ("IMPL") accounts; any Treasury accounts; any legislative settlement or award accounts; and any judgment accounts, regardless of whether the above-described accounts are principal or interest accounts, whether they were established pursuant to Federal legislation, and whether they are or were maintained, managed, invested, or controlled by either the Department of the Interior ("Interior") or the Department of the Treasury ("Treasury").

filed in this case, and in this Joint Stipulation of Settlement, that were alleged to be owed to Plaintiff at any time, up to the date of the Court's entry of this Joint Stipulation of Settlement as an Order.

5.      **Plaintiff's Release, Waiver, and Covenant Not to Sue Unaffected by Tolling Provisions.** Nothing in any of the appropriation acts for the Interior Department, which address the application of the statute of limitations to claims concerning losses to or mismanagement of trust funds (see, e.g., Department of the Interior Appropriations Act of 2009, Pub. L. No. 111-88, 123 Stat. 2904, 2922 (2009), and similar provisions in other Interior Department appropriations acts enacted before or after the date of the entry of this Joint Stipulation of Settlement as an Order), shall affect in any way Plaintiff's foregoing release, waiver, and covenant not to sue.

6.      **Exceptions to Plaintiff's Release, Waiver, and Covenant Not to Sue.** Notwithstanding the provisions of Paragraph 4 above, nothing in this Joint Stipulation of Settlement shall diminish or otherwise affect in any way, and nothing in the September 25, 2024 Memorandum Opinion and Order shall have preclusive effect with respect to:

a.      Plaintiff's ability, subject to the provisions of Paragraph 14 below, to assert a claim for harms or damages allegedly caused by Defendants after the Court's entry of this Joint Stipulation of Settlement as an Order;

b.      Plaintiff's water rights, whether adjudicated or unadjudicated; Plaintiff's authority to use and protect such water rights; and Plaintiff's claims for damages for loss of water resources allegedly caused by Defendants' failure to establish, acquire, enforce or protect such water rights;

c.      Plaintiff's federal law hunting, fishing, trapping and gathering rights, including federally reserved and aboriginal rights, whether adjudicated or unadjudicated, and

Plaintiff's authority to use and protect such rights;

        d.    Plaintiff's rights and remedies under federal laws of general application

for the protection of the environment (and regulations arising under such laws), including but not

limited to: (1) the Clean Water Act, 33 U.S.C. § 1251 et seq.; (2) the Safe Drinking Water Act,

42 U.S.C. § 300f et seq.; (3) the Clean Air Act, 42 U.S.C. § 7401 et seq.; (4) the Resource

Conservation and Recovery Act, 42 U.S.C. § 6901 et seq.; (5) the Nuclear Waste Policy Act, 42

U.S.C. § 10101 et seq.; (6) the Comprehensive Environmental Response, Compensation and

Liability Act, 42 U.S.C. § 9601 et seq.; (7) the Oil Pollution Act, 33 U.S.C. § 2701 et seq.; (8)

the Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 et seq.; (9) the Toxic Substances

Control Act, 15 U.S.C. § 2601 et seq.; (10) the Indian Lands Open Dump Cleanup Act of 1994,

25 U.S.C. § 3901 et seq.; (11) the Endangered Species Act of 1973, 16 U.S.C. § 1531 et seq.;

(12) the Atomic Energy Act of 1954, 42 U.S.C. § 2011 et seq.; and (13) the Uranium Mill

Tailings Radiation Control Act of 1978, 42 U.S.C. § 2201 et seq.;

        e.    Plaintiff's or Defendants' claims, including but not limited to claims

arising prior to July 19, 1966, that were identified by or submitted to Defendants, pursuant to the

Indian Claims Limitation Act of 1982, Pub. L. 97-394, 96 Stat. 1966, which extended the statute

of limitations contained in 28 U.S.C. § 2415 (such claims being commonly referred to as

"Section 2415 claims"), against third parties;

        f.    Plaintiff's claims based on Indian Self-Determination and Education

Assistance Act ("ISDEAA") contract support costs improperly withheld by the United States, if

any, e.g., *Salazar v. Ramah Navajo Chapter*, 132 U.S. 2181 (2012);

        g.    Plaintiff's claims relating to an alleged interest in lands submerged under

rivers and streams (including but not limited to the lands submerged under the Grand/Neosho

and Verdigris Rivers) located within the boundaries of the Plaintiff's reservation, not including claims within the scope of Paragraph 4(a) above, which remain subject to the waiver, release, and covenant not to sue set out in Paragraph 4;

    h. Plaintiff's ability to assert any claims not otherwise waived herein; and

    i. Any defenses that Defendants have or may have regarding any claims that Plaintiff may assert in subsequent litigation or administrative proceedings.

   **7.** **Plaintiff's Attestation Regarding Its Trust Account Balances, as Stated by the Bureau of Trust Funds Administration.** In consideration of the payment required by Paragraph 2 above and upon the Court's entry of this Joint Stipulation of Settlement as an Order, Plaintiff, as a matter of settlement and compromise, accepts as accurate the balances of all of Plaintiff's trust fund accounts, as those balances are stated in the most recent periodic Statements of Performance issued by the Bureau of Trust Funds Administration ("BTFA") (attached hereto as Exhibit 1).

   **8.** **Plaintiff's Acceptance of Periodic Statements of Performance Provided by BTFA.** Plaintiff accepts, as a matter of settlement and compromise, the most recent Statements of Performance issued by BTFA (attached hereto as Exhibit 1), as accurate, full, true, and correct statements of all of Plaintiff's trust fund accounts as of the date of the Statements. Further, Plaintiff accepts, as a matter of settlement and compromise, the Statements of Performance in fulfillment of any accounting of Plaintiff's trust fund accounts that is required by law as of the date of the Court's entry of this Joint Stipulation of Settlement as an Order.

   **9.** **Plaintiff's Acceptance of Defendants' Compliance with Applicable Law as Satisfaction of Any Duty and Responsibility to Account for and Report to Plaintiff Regarding Plaintiff's Trust Funds.** Plaintiff accepts that Defendants satisfy any duty and

responsibility to account for and report to Plaintiff regarding Plaintiff's trust funds, through Defendants' compliance with applicable provisions of the United States Constitution, treaties, and federal statutes and regulations, as well as any subsequent amendments thereto, as those requirements may be construed by the courts.

10.     **Interior's Provision of Certain Information to Plaintiff Under Section 102 of Reform Act of 1994.** In satisfaction of its reporting responsibilities under Section 102 of the Reform Act of 1994 (codified at 25 U.S.C. § 4011), Interior currently provides Plaintiff with the following, as it has done since 1995:

a.     A periodic Statement of Performance, on a quarterly (or, upon request, monthly) basis, for all of Plaintiff's funds held in trust pursuant to the Act of June 24, 1938 (codified at 25 U.S.C. § 162a), in the form attached hereto as Exhibit I. Conditional on Interior continuing to provide Plaintiff with these reports or with reports that substantially conform, as to the frequency of issuance and substantive content, to these reports, Plaintiff attests that the mailing, provision, or otherwise making available to Plaintiff of the foregoing satisfies the present reporting requirements of Section 102 of the Reform Act of 1994 (codified at 25 U.S.C. § 4011).

b.     A letter, on an annual basis, that relates to Interior's annual audit of all funds held in trust for the benefit of tribes pursuant to the Act of June 24, 1938 (codified at 25 U.S.C. § 162a) in the form attached hereto as Exhibit 2. Conditional on Interior continuing to provide Plaintiff with these letters or with letters that substantially conform, as to the frequency of issuance and substantive content, with these letters, Plaintiff attests that the mailing, provision, or otherwise making available to Plaintiff of the foregoing satisfies the present annual auditing requirements of Section 102 of the Reform Act of 1994 (codified at 25 U.S.C. § 4011).

11.     **Interior's Provision of Certain Information to Plaintiff Under Section 303(b)(2)(B)(ii) of Reform Act of 1994.** In satisfaction of its reporting responsibilities under Section 303(b)(2)(B)(ii) of the Reform Act of 1994 (codified at 25 U.S.C. § 4043(b)(2)(B)(ii)), Interior presently provides Plaintiff with periodic Statements of Performance, which contain a report of Plaintiff's trust fund investments and the return on those investments, in the form attached hereto as Exhibit 1. Plaintiff attests that the Interior Department's continued mailing, provision, or otherwise making available to Plaintiff of the periodic Statements of Performance or of similar reports satisfies the present requirements of Section 303(b)(2)(B)(ii) of the Reform Act of 1994 (codified at 25 U.S.C. § 4043(b)(2)(B)(ii)).

12.     **Preservation of Plaintiff's Right to Contest Accuracy of Interior's Reports; Continued Force of Applicable Law.**

a.     Nothing in Paragraphs 10 and 11 of this Joint Stipulation of Settlement shall signify Plaintiff's acceptance of any Statement of Performance or any annual audit, or the contents of any Statement of Performance or audit, that Interior provides to Plaintiff, after the date of the entry of this Joint Stipulation of Settlement as an Order, as accurate.

b.     Nothing in this Joint Stipulation of Settlement, including but not limited to provisions regarding Plaintiff's acknowledgments and attestations in Paragraphs 10 and 11, is in derogation of either Party's obligation to comply with applicable federal law, including any future amendments to the Reform Act of 1994.

13.     **Requirement for Notice by Plaintiff of Certain Claims Concerning Information in Future Periodic Statements of Account or Performance; Availability of Trust Account Information to Plaintiff.**

a.     To the extent the provisions of this Paragraph relate to challenges to the

accuracy of activity within a Statement of Performance as described in 25 C.F.R. § 2.802, the

provisions of 25 C.F.R. Part 2, subpart H (or any successor thereto) govern, notwithstanding the

provisions of 25 C.F.R. § 2.803. Otherwise, if Interior continues in the future to provide Plaintiff,

at a minimum, with reports that substantially conform, as to the frequency of issuance and

substantive content, to the reports that are specified in Paragraphs 10(a) and Paragraph 11 above

(attached as Exhibit 1) and if Plaintiff has any of the following claims, Plaintiff shall present the

claim(s) in writing to Interior, in the manner set forth herein, within six years after the close of

the calendar year in which the reported period occurs or within six years after the Statement of

Performance or similar report is provided to Plaintiff, whichever is later:

> (1)    Defendants failed to invest tribal income in a timely manner;

> (2)    Defendants failed to obtain an appropriate return on invested

funds;

> (3)    Defendants failed to disburse monies in a proper and timely

manner from trust accounts listed on a Statement of Performance or similar report; or

> (4)    Defendants disbursed monies without Plaintiff's proper

authorization.

> b.    In presenting its written claim, Plaintiff shall include a reasonably

particular description of the grounds for the claim. Further, Plaintiff shall present its written

claim to Interior, by U.S. certified mail, at the following address:

> United States Department of the Interior
> Bureau of Trust Fund Administration
> P.O. Box 26928
> Albuquerque, NM 87125
> Attn: Principal Deputy Bureau Director, Trust Management

Also, Plaintiff shall provide a copy of its written claim to the Regional Director of the Eastern Oklahoma Regional Office of the Bureau of Indian Affairs ("BIA").

   c. Within 60 days after receiving Plaintiff's written claim, Interior will provide Plaintiff with a written response, explaining how it proposes to respond to the claim or advising Plaintiff that it needs additional time to respond to the claim.

   d. Except for claims of fraud or gross negligence, Plaintiff conditionally releases, waives, and covenants not to sue the United States, its agencies (including but not limited to Defendants), its officials, its employees, or its agents for, the claims listed in subparagraph (a) above, if Plaintiff does not present the claims in writing to Interior as specified in this Joint Stipulation of Settlement. Plaintiff shall not file suit seeking damages or specific or equitable relief before it has received Interior's response to Plaintiff's claim. Notwithstanding the foregoing, nothing in this paragraph shall preclude Plaintiff from filing suit, where (1) Plaintiff has provided notice of the grounds for a claim pursuant to subparagraph (b) above; (2) Defendants have not responded within 60 days; and (3) Plaintiff believes in good faith that the applicable statute of limitations for such claim may expire within 30 days, absent the filing of a suit.

   e. Plaintiff's duly authorized officials are entitled to request, in writing, additional information regarding Plaintiff's trust accounts at any time. Plaintiff shall direct such written requests to the following address:

    United States Department of the Interior
    Bureau of Trust Fund Administration
    P.O. Box 26928
    Albuquerque, NM 87125
    Attn: Deputy Bureau Director, Trust Operations - Field

Plaintiff shall make any new designations of authorized official(s) by tribal resolution and notify Interior in writing of any such new designations, within 30 days of such a designation, so that BTFA may provide information to and request information from Plaintiff's duly authorized officials concerning Plaintiff's tribal trust accounts.

        f.     BTFA shall provide the information requested under subparagraph (e) above as soon as reasonably practicable.

**14.    Treasury's Obligations Regarding Management of Plaintiff's Trust Funds.** Treasury's obligations under this Joint Stipulation of Settlement regarding the management of Plaintiff's trust funds are defined by 25 U.S.C. § 161a(a) and other applicable federal law.

**15.    Handling of Settlement Proceeds.** Upon the Court's entry of this Joint Stipulation of Settlement as an Order, or as soon thereafter as reasonably possible, Defendants shall transfer or cause to be transferred, in a single payment, the sum of money specified in Paragraph 2 above, to an account that (a) Plaintiff shall specify to Defendants within 15 days of the date of the Court's entry of this Joint Stipulation of Settlement as an Order and in advance of Defendants' transfer of the money, and (b) is or shall be in a private bank or other third-party financial institution. The entire sum of money specified in Paragraph 2 above shall be available for use by Plaintiff as it decides in its sole discretion. Defendants shall not transfer to or deposit in, or cause to be transferred to or deposited in, Plaintiff's "Proceeds of Labor" account or any other trust accounts the sum of money specified in Paragraph 2 above. Plaintiff specifically waives any and all claims relating to the investment, disbursement, or other management of the sum of money specified in Paragraph 2 above. Furthermore, Defendants shall have no duty or liability, including, without limitation, no liability as fiduciary, trustee, or similar status

whatsoever, regarding Plaintiffs use or expenditure of the sum of money specified in Paragraph 2 above.

16.     **Entire Agreement Between Parties, Modification, and Non-Severability.** This Joint Stipulation of Settlement is the entire agreement between the Parties in this case. All prior conversations, meetings, discussions, drafts, and writings of any kind are specifically superseded by this Joint Stipulation of Settlement. The terms of this Joint Stipulation of Settlement may not be changed, revised, or modified, except as provided by a written instrument that is signed by the Parties to this Joint Stipulation of Settlement and that is approved and entered by this Court as an Order. This Joint Stipulation of Settlement shall be effective upon the date of the Court's entry of the Joint Stipulation of Settlement as an Order.

17.     **Filing of Joint Motion and Proposed Order or Joint Stipulation Regarding Dismissal of Litigation with Prejudice.** As soon as practicable after receiving notice of the Court's entry of this Joint Stipulation of Settlement as an Order and of the payment required by Paragraph 2 above, the Parties will execute and file a joint motion and proposed order or a joint stipulation to dismiss this case with prejudice.

18.     **Compliance with Anti-Deficiency Act.** No term or provision of this Joint Stipulation of Settlement will constitute or will be construed as a commitment or a requirement that Defendants obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation. In the event that the Anti-Deficiency Act, any other applicable law, or any regulation precludes Defendants from obligating or paying the sum of money set forth in Paragraph 2 above, this Joint Stipulation of Settlement, including its terms, conditions, dismissal, release, waiver, and covenant not to sue, shall be deemed null, void, and unenforceable.

19. **No Effect on Federal Funding.** No provision of this Joint Stipulation of Settlement shall impair Plaintiffs ability to receive federal funding.

20. **Authority of Parties to Enter Into Joint Stipulation of Settlement.** The undersigned representative(s) for each Party certifies that he or she is fully authorized by the Party or Parties whom he or she represents to enter into the terms and conditions of this Joint Stipulation of Settlement and to bind legally such Party or Parties to it. In particular, undersigned counsel for Plaintiff certifies that, as the Attorney General of the Cherokee Nation, he is fully authorized to execute this Joint Stipulation of Settlement on behalf of the Cherokee Nation. pursuant to Article VII, Section 13 of the Cherokee Nation Constitution and *A Legislative Act Amending Title 51 "Officers", of the Cherokee Nation Code Annotated; Relating to Duties of the Attorney General*, the "*Attorney General Act*," section 7(B)(16) (*codified at* Title 51, Cherokee Nation Code, § 104(B)(16)), and that no exception to the Attorney General's authority listed in the Attorney General Act applies to this Agreement.

21. **Execution in Counterpart of Joint Stipulation of Settlement.** This Joint Stipulation of Settlement may be executed in one or more counterparts, each of which shall constitute an original, and all of which, taken together, shall constitute one and the same instrument. Facsimile signatures shall have the same effect as original signatures in binding the Parties.

22. **Alternative Dispute Resolution Process Relating to Joint Stipulation of Settlement.** After the Court's entry of this Joint Stipulation of Settlement as an Order and dismissal with prejudice of this case, if there is a dispute over compliance with any term or provision of the Joint Stipulation of Settlement, the disputing Party will notify the other Party in

writing of the dispute. The Parties will attempt to work out the dispute informally, as set forth below, before seeking judicial review by this Court.

      a.      The disputing Party will engage the other Party in informal dispute resolution. During this informal dispute resolution period, which will not exceed 90 days (unless the Parties agree to an extension of the period), the Parties will meet as many times as both deem necessary to discuss and attempt to resolve the dispute.

      b.      If the Parties are unable to resolve the dispute through informal dispute resolution, either Party may file a motion asking that this Court enforce the relevant term(s) and provision(s) of this Joint Stipulation of Settlement.

23.    **Continuing Jurisdiction.** The Parties hereby agree and stipulate that this Court shall have continuing jurisdiction only for the limited purpose of interpreting and enforcing the terms and conditions of this Joint Stipulation of Settlement, after it has been entered as an Order of the Court.

24.    **Parties' Attorneys' Fees and Costs.** Each Party shall be responsible for its own attorneys' fees and costs, as well as any other fees and costs, related to this case.

IN WITNESS WHEREOF, this Joint Stipulation of Settlement has been duly executed by the Parties hereto.

Respectfully submitted,

| | |
|---|---|
| _____ | TODD KIM |
| Chad Harsha | ASSISTANT ATTORNEY GENERAL |
| Attorney General | |
| THE CHEROKEE NATION | _/s/ Angela Ellis_____ |
| OFFICE OF THE ATTORNEY GENERAL | ANGELA N. ELLIS |
| P.O. Box 1533 | JACOB D. ECKER |
| Tahlequah, OK 74465 | Trial Attorneys |
| Tel: 918-453-5369 | Environment & Natural Resources Division |
| Fax: 918-458-5580 | United States Department of Justice |
| Email: chad-harsha@cherokee.org | Ben Franklin Station, P.O. Box 7611 |

*/s/ Michael D. Goodstein*

Anne E. Lynch, DC Bar No. 976226
Michael D. Goodstein, DC Bar No. 469156
VAN NESS FELDMAN LLP
2000 Pennsylvania Avenue NW #6000,
Washington, DC 20006
Tel: 202-298-1800
Email: alynch@vnf.com
mgoodstein@vnf.com

Michael M. Frandina
ASKMAN LAW FIRM LLC
1543 Champa Street, Suite 400
Denver, CO 80202
Tel: 720-407-4331
Email: michael@askmanlaw.com

Jason B. Aamodt
Krystina E. Phillips
Dallas L.D. Strimple
INDIAN & ENVIRONMENTAL LAW GROUP
204 Reunion Center
Nine East Fourth Street
Tulsa, OK 74103
Tel: 918-347-6169
Email: jason@iaelaw.com
deannaa@iaelaw.com
krystina@iaelaw.com
dallas@iaelaw.com

*Counsel for Plaintiff Cherokee Nation*

Washington, DC 20044-7611
(202) 305-0479
angela.ellis@usdoj.gov

*Attorneys for Defendants*

*Of Counsel for Defendants:*

JAMES FERGUSON
Acting Director
SHANI N. SUMTER
Attorney-Advisor
VICTORIA A. CEJAS
Attorney-Advisor
CHRISTOPHER K. KING
Attorney-Advisor

Office of the Solicitor, Indian
Trust Litigation Office
U.S. Department of the Interior

THOMAS B. KEARNS
Office of the Chief Counsel Bureau
of the Fiscal Service
U.S. Department of the Treasury

## [PROPOSED] ORDER

SO ORDERED.

Date: _____

_____
TREVOR N. MCFADDEN
United States District Judge

# <u>EXHIBIT 1</u>

**(PERIODIC STATEMENTS OF PERFORMANCE ISSUED BY BUREAU OF TRUST FUNDS ADMINISTRATION, DEPARTMENT OF THE INTERIOR, FOR TRIBE'S TRUST ACCOUNTS, FOR PERIOD ENDING ON NOVEMBER 30, 2024 (FOR ACCOUNTS THAT GENERATE MONTHLY STATEMENTS) OR SEPTEMBER 30, 2024 (FOR ACCOUNTS THAT GENERATE QUARTERLY STATEMENTS) TO BE FILED UNDER SEAL, PURSUANT TO COURT ORDER)**

# EXHIBIT 2

## (BTFA AUDIT LETTER FOR FISCAL YEAR 2024)



# United States Department of the Interior

### BUREAU OF TRUST FUNDS ADMINISTRATION
### Washington, DC 20240

November 11, 2024

The Fiscal Year (FY) 2024 independent audit of the financial statements for Tribal and Other Trust Funds and Individual Indian Monies Trust Funds Managed by the U.S. Department of the Interior, Bureau of Trust Funds Administration (the "BTFA") has been completed. BTFA is responsible for the management (receipting, investing, disbursing, accounting, reconciling and reporting) of the monetary assets of American Indians held in trust by the Department of the Interior. BTFA also maintains the official archive of American Indian Records.

I am pleased to report that, for the twelfth consecutive year, the financial statements for the Individual Indian Monies Trust Funds have received an unmodified audit opinion for FY 2024.

BTFA employees have provided significant asset management services to Indian Tribes and individual Indian trust beneficiaries on a daily basis. We recently established an administrative review process that allows Tribal and Individual Indian Money account holders to dispute the accuracy of statements of performance. Learn more at https://www.doi.gov/ost/objection.

I hope you find this year's audited financial statements informative and useful. Copies of this report can be reviewed and/or downloaded through the Bureau of Trust Funds Administrations' website located at http://www.doi.gov/ost. You may also obtain a copy of the report by calling the Trust Beneficiary Call Center toll free at 1-888-678-6836 and requesting the FY 2024 Financial Statement Audit Report. The Trust Beneficiary Call Center is also available if you have any questions regarding your account or the audit report.

Best Regards,

Jerold Gidner
Director, Bureau of Trust Funds Administration